UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ABRAHAN SAUL BERRIOS PALOMINO,<br>Petitioner,<br>v.<br>ANDRE QUINONES, *et al.*,<br>Respondents. | CASE NO. 2:26-cv-03948-GJL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Abrahan Saul Berrios Palomino ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On October 15, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, alleging Respondents violated his right to due process under the Fifth Amendment to the United States Constitution and requesting immediate release. *Id.* Respondents to the Petition include Markwayne Mullin (the Department of Homeland Security ("DHS") Secretary), Andre Quinones (Acting Field Office Director for ICE's Seattle Field Office), Todd Blanche (U.S. Attorney General), Bruce Scott

(Warden of the NWIPC), and DHS (collectively "Respondents").[1] The Petition has been fully briefed.[2] Dkts. 1, 6, 9.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) **IN PART** and **ORDERS** relief as set forth in the conclusion below.

## I. FACTUAL BACKGROUND

Petitioner is a native and citizen of Peru who was apprehended on August 16, 2024, by U.S. Customs and Border Patrol (USPB) upon entry into the United States. Dkt. 1 at 6. That same day, USPB placed Petitioner in DHS custody pending removal proceedings. *Id.*; Dkt. 6 at 4. On September 29, 2024, U.S. Citizenship and Immigration Services (USCIS) "approved a positive credible-fear finding" in relation to Petitioner's asylum claim. Dkt. 6 at 4. On September 30, 2024, USCIS issued Petitioner a Notice to Appear and placed him in removal proceedings. Dkt. 1 at 6; Dkt. 6 at 4. On October 7, 2024, Petitioner was released into the United States on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5). Dkt. 6 at 4. Petitioner's humanitarian parole was set to expire on or around October 7, 2025. *Id.* As a condition of his humanitarian parole, Petitioner was enrolled in an Alternative to Detention ("ATD") program and was required to comply with conditions of supervision, which included a reporting requirement to ICE. Dkt. 1 at 6; Dkt. 6 at 5.

Between his initial release and eventual re-detention by immigration officials, Petitioner moved to Oregon to live with his partner and his five-year-old daughter, applied for work authorization and asylum, obtained employment, and cared for his family. Dkt. 1 at 6. In April

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Respondent Andre Quinones is substituted for Julio Hernandez.

[2] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 4.

2026, Petitioner was arrested by local law enforcement on charges related to a domestic violence incident.[3] Dkt. 1 at 6; Dkt. 6 at 5. Petitioner was held in jail and his bond was set at $10,000.00. Dkt. 1 at 6. On April 29, 2026, Petitioner pled guilty to Assault in the Fourth Degree. *Id.*; Dkt. 6 at 5. The remaining charges were dismissed pursuant to a plea agreement, and Petitioner was eventually released. Dkt. 6 at 5. Petitioner maintains that he pled guilty because he could not afford bond. Dkt. 1 at 6; Dkt. 2 at ¶ 11.

On August 5, 2026, Petitioner appeared for a routine check-in with ICE pursuant to his reporting requirements and was re-detained without an opportunity to be heard regarding the reasons for his re-detention.[4] Dkt. 1 at 6; Dkt 6 at 5. Petitioner was served with a Warrant for Arrest of Alien (Form I-200) and a Notice of Custody Determination (Form I-286) upon his re-detention. Dkt. 6 at 5.

## II. LEGAL STANDARDS

### A. Habeas Petitions

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a

---

[3] Petitioner objects to the admissibility of the I-213 Form (Dkt. 8-4), the Declaration of Deportation Officer Mathew Smith (Dkt. 7), and the Petition to Plead Guilty/No Contest/Conditional Plea (Dkt. 8-5) which Respondents tendered as evidence. Dkt. 9 at 3–5. Petitioner argues that they are unreliable, contain hearsay, violate the best evidence rule, and lack personal knowledge. *Id*. However, the Court only refers to these documents as evidence of Respondents' motivation or reasoning for pursuing Petitioner's re-detention, not as evidence for the truth of the matter asserted.

[4] Respondents state that Petitioner was scheduled for a "merits hearing" on November 10, 2026, but have not confirmed that the hearing occurred on that date or filed any supplemental notice indicating a change in circumstances since the Petition became ripe for review. Dkt. 6 at 6.

preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

**B. Mandatory Detention Scheme**

8 U.S.C. § 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

This sole exception to mandatory detention, often referred to as humanitarian parole, may be granted "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for humanitarian parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted humanitarian parole, it means that a DHS official with authority[5] decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

Humanitarian parole may be terminated in two ways; each with their own procedural requirements. First, parole terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). With automatic termination of parole, no written notice is required. *Id.* Second, if parole is not

[5] DHS officials authorized to make humanitarian parole decisions are "the Assistant Commissioner, Office of Field Operations; Director, Detention and Removal; directors of field operations; port directors; special agents in charge; deputy special agents in charge; associate special agents in charge; assistant special agents in charge; resident agents in charge; field office directors; deputy field office directors; chief patrol agents; district directors for services; and those other officials as may be designated in writing, subject to the parole and detention authority of the Secretary or his designees." 8 C.F.R. § 212.5(a).

terminated automatically, either "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]"). In such instances, the noncitizen must be provided with written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i).

Whether automatic or following notice, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered *shall be executed*." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] *shall again be released* on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). Stated differently, unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official. *Id.* Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole. *Id.*

Taken together, the applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures

for on-notice termination apply. *See, e.g.*, *Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *5–6 (W.D. Wash. Feb. 13, 2026).

**C. Due Process**

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

**III. DISCUSSION**

Petitioner argues that Respondents violated the Due Process Clause of the Fifth Amendment to the United States Constitution when they re-detained him without notice and a meaningful opportunity to be heard regarding a custody redetermination. Dkt. 1 at 2. In response, Respondents argue that (1) Petitioner is lawfully detained under 8 U.S.C. § 1225(b) because his humanitarian parole expired without extension, and (2) under the *Mathews* framework, Petitioner is not entitled to a pre-deprivation hearing. Dkt. 6 at 6–11.

Respondent's first argument is inapposite. *Colmenarez v. Hernandez*, No. 2:26-CV-00845-GJL, 2026 WL 850535, at *4 (W.D. Wash. Mar. 27, 2026) (collecting cases); *P.T. v. Hermosillo*, No. 25-cv-02249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained."). Respondents must comport with due process regardless of which detention framework applies. *Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *8 n. 1 (W.D. Wash. Mar. 11, 2026) ("[T]he Due Process Clause applies to [p]etitioners—who were deprived of their liberty when ICE revoked their release and re-detained them—regardless of whether they are subject to detention under Section 1225(b)(1), Section 1225(b)(2), or Section 1226(a). Courts in this District have consistently so held.") (collecting cases); *Rodriguez v. Hernandez*, No. 2:26-CV-03601-TL, 2026 WL 3319508, at *2 (W.D. Wash. Nov. 3, 2026) ("As [p]laintiff points out, the authority for his detention is of minimal relevance to the procedural due process claim he raises[.]").

Thus, the Court proceeds to Respondents' second argument and assesses whether Petitioner's re-detention without prior written notice and an opportunity to be heard complied with due process under the familiar three-part *Mathews* framework.

First, Petitioner's private interest is substantial. Dkt. 6 at 9 (admitting the same). Petitioner was paroled into the United States and lived outside of immigration detention for almost two years before Respondents abruptly returned him to physical custody. Regardless of which detention authority applies, Petitioner's interest in maintaining that liberty, and avoiding

renewed physical confinement by immigration officials, lies at the core of the liberty interests protected by the Due Process Clause. *See Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Enf't*, 192 F.4th 894, 909 (9th Cir. 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Torres v. Hermosillo*, 25-cv-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases recognizing liberty interests of those released on humanitarian parole); *Dieng*, 2026 WL 411857, at *7 ("A petitioner's liberty interest does not expire along with his parole.") (citation modified). Petitioner's April 29, 2026, conviction and sentence does not extinguish his liberty interest. *Alvarez v. Warden Nw. ICE Processing Ctr.*, No. 2:26-CV-02599-JHC, 2026 WL 2718366, at *3 (W.D. Wash. Sept. 15, 2026) ("[T]here is no correlation between one's past criminal history and one's current interest in freedom.") (collecting cases); *see e.g.*, *Arevalo-Hortua v. Hernandez*, No. 2:26-CV-02994-JHC, 2026 WL 2797986, at *6 (W.D. Wash. Sept. 18, 2026). Thus, the first *Mathews* factor weighs in favor of Petitioner.

Second, the procedures employed here created a substantial risk of erroneous deprivation, while additional process would have offered significant value. To begin, Respondents' failure to adhere to the regulatory scheme governing revocation of Petitioner's humanitarian parole created a heightened risk of erroneous deprivation in this case. *Torres*, 2026 WL 145715, at *7 ("[T]he risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus depriving the noncitizen of process due prior to revocation.") (collecting cases).

As outlined in Section II.B. above, several procedural protections apply to humanitarian parole decisions. For example, unless automatically terminated by expiration of parole or the noncitizen's departure from the United States, a noncitizen is entitled to written notice that their

humanitarian parole is being revoked. 8 C.F.R. § 212.5(e)(1). For noncitizens entitled to notice, termination of humanitarian parole requires the "accomplishment of the purpose for which parole was authorized" or for an authorized DHS official to decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i). Courts in this District have concluded that where humanitarian parole automatically expires but immigration officials do not timely return the noncitizen to custody, continuation of parole may be implied and the procedures governing on-notice termination thereafter apply. *See, e.g.*, *Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *11–12 (W.D. Wash. Mar. 12, 2026); *Len Nava v. Markwayne Mullin*, No. 2:26-CV-02324-TLF, 2026 WL 2294576, at *2 (W.D. Wash. Aug. 10, 2026).

Any argument that the on-notice termination procedures did not apply in this case due to the expiration of parole is unavailing because Petitioner was not re-detained for nearly a year *after* the initial expiration of his humanitarian parole. *Caisa Telenchana*, 2026 WL 696806, at *11–12; *Len Nava*, 2026 WL 2294576, at *2. Further, any argument Respondents may have that the written notice requirement in 8 C.F.R. § 212.5(e)(1) was satisfied by the Warrant for Arrest of Alien or the Notice of Custody Determination provided to Petitioner *on the same day* that he was re-detained is also unpersuasive for the same reasons discussed in *Kozlenkko v. Hernandez*, No. C26-3147-KKE, 2026 WL 2905404, at *4 (W.D. Wash. Sept. 28, 2026) (outlining several problems with this position, including that the subject NTA was issued following arrest and did not include the reasons for the revocation of parole). Finally, Respondents did not comply with the other procedures required for on-notice termination of humanitarian parole. That is, Respondents do not specifically contend that the purposes for Petitioner's parole had been accomplished or that an authorized DHS official determined Petitioner's parole was no longer

warranted for humanitarian reasons or the public benefit as contemplated by 8 C.F.R. § 212.5(e)(2)(i). Dkt. 6 at 9. Thus, based on the current record, it appears the regulatory procedures for revocation of Petitioner's humanitarian parole were simply ignored.

Moreover, while Respondents argue that they (1) conducted a custody redetermination at Petitioner's August 5, 2026, check-in and (2) arrested him upon "an individualized assessment of Petitioner's … conviction[,]" it is unclear from the instant record whether an authorized DHS official determined that Petitioner's parole no longer served the public interest or that the assessment was tested through an adversarial proceeding in a neutral forum. *See Uisimbayev v. Scott*, No. 2:26-CV-03061-JHC, 2026 WL 2797987, at *5 (W.D. Wash. Sept. 18, 2026) (finding procedural due process violation where, in addition to failure to follow procedures outlined in § 212.5, the government failed to provide a custody hearing in a neutral forum). Indeed, Respondents' own records demonstrate that (1) Petitioner was advised of his ability to obtain custody review by an Immigration Judge ("IJ") and (2) he requested such review. Dkt. 8-6. Yet there is no evidence or allegation demonstrating that such review has been provided to Petitioner either prior to his re-detention or in the months that followed.

Moreover, by the nature of his prior release on humanitarian parole, immigration officials previously determined that Petitioner presented neither a security risk nor a risk of absconding. 8 C.F.R. § 212.5(b). While circumstances may have changed, that prior determination illustrates that an untested re-detention decision would create an unacceptably high risk of erroneous deprivation. *See Ramirez Tesara*, 800 F. Supp. 3d at 1137; *E.A. T.-B.*, 795 F. Supp. 3d at 1324. The second *Mathews* factor therefore weighs in favor of Petitioner.

Third, the Court recognizes the Government's substantial interest in the efficient administration and enforcement of the immigration laws, including its lawful authority to detain

noncitizens when appropriate. But Respondents identify no concrete administrative burden that would have resulted from providing Petitioner prior written notice, a parole termination decision by an authorized DHS official, or the opportunity to test the reasons for his re-detention in a neutral forum.

The last omission is particularly notable here because, again, immigration officials themselves notified Petitioner that he could seek post-deprivation review before an IJ, Petitioner requested that review, and Respondents have not provided the review. *See* Dkt. 8-6. As the Court has repeatedly recognized, custody hearings are routine proceedings, and the marginal administrative burden associated with providing such review is insufficient to outweigh the substantial liberty interest implicated by physical detention. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025). The third *Mathews* factor therefore also favors Petitioner.

On balance, the *Mathews* factors establish that the process afforded here was constitutionally inadequate. Accordingly, the Court concludes that Respondents re-detained Petitioner without providing the process due to him under the Fifth Amendment to the United States Constitution.

## IV. REMEDY

### A. Conditional Release

Having determined that Petitioner was re-detained without the constitutionally required process, the Court now determines the appropriate remedy for his unlawful confinement. Petitioner seeks immediate release from immigration detention. Dkt. 1 at 26. However, the Court concludes that an order of conditional release requiring the provision of a prompt post-

deprivation bond hearing is sufficient to cure the due process violations incurred in his re-detention. *See, e.g., Caisa Telenchana*, 2026 WL 696806, at *13.

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)).

This Court and others in this District have ordered conditional release where, for example, the record showed that ICE officials performed some individualized assessment of flight risk, dangerousness, or noncompliance with release conditions before re-detaining a petitioner and that assessment provided the basis for the re-detention decision. *See, e.g., Caisa Telenchana*, 2026 WL 696806, at *13; *Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026); *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *5 (W.D. Wash. Feb. 23, 2026). Here, Respondents have submitted specific evidence demonstrating that, while Petitioner was not provided written notice of the termination of his humanitarian parole as required by 8 C.F.R. § 212.5(e)(2)(i) or an opportunity to be heard on the reasons for his re-detention as required by due process, immigration officials *may have* performed an individualized assessment and determined that Petitioner's continued release posed a risk of danger to the community. *See* Dkt. 6 at 5; Dkt. 8-4 at 3; Dkt. 7 at ¶ 13.

Therefore, before requiring his unconditional release from immigration detention, the Court provides Respondents with the opportunity to support Petitioner's continued detention at a

prompt bond hearing held before an IJ. At that bond hearing, Respondents must provide clear and convincing evidence demonstrating that, if released, Petitioner would pose a risk of danger to the community. *See Balwan*, 2026 WL 497098, at *5 (noting that clear and convincing evidence standard was appropriate when fashioning a remedy, even if such a standard were not required "as a general matter" for all noncitizens re-detained following release); *Singh*, 2026 WL 592265, at *3 (noting circuit split on evidentiary standard for post-deprivation bond hearings and concluding it was "reasonable" to impose clear and convincing evidence standard to remedy due process violation).

**B. Injunctive Relief**

Petitioner also requests injunctive relief. Dkt. 1 at 26. Particularly, Petitioner asks that Respondents be prohibited from re-detaining him without providing written notice and a hearing prior to re-detention at which Respondents would bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks. *Id.*

Respondents argue that Petitioner has not established a cognizable danger of recurrent violations such that "forward-looking" injunctive relief is warranted. Dkt. 6 at 10–11. However, in this case, Petitioner alleges, and the record supports, a clear pattern of re-detention without sufficient process by Respondents, demonstrating that, if released, Petitioner faces a continuing threat of similar harm throughout his removal proceedings. *See* Dkt. 1. As set forth above, Respondents re-detained Petitioner following his release into the community without adequate notice, without affording a hearing, and without following federal regulations governing Respondents' own claimed authority to detain. This pattern demonstrates a continuing risk of constitutional harm, the recurrence of which is not speculative.

Accordingly, the Court concurs with Petitioner that, consistent with the requirements of due process, Respondents must provide adequate notice and a hearing before a neutral decisionmaker in conjunction with future re-detention decisions while Petitioner's removal proceedings are pending. With respect to the timing and evidentiary burden required, however, the Court declines to prescribe a particular procedural framework for all possible re-detention decisions Petitioner may face.

## V. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1) Petitioner's Petition (Dkt. 1) is **GRANTED IN PART**;

(2) Respondents **SHALL provide** Petitioner with an individualized bond hearing, on adequate notice to Petitioner and his appropriate counsel, before an Immigration Judge **within fourteen days of this Order** unless the hearing is continued at the Petitioner's request. The Government **SHALL bear** the burden of proof by clear and convincing evidence that Petitioner poses a risk of flight or danger to the community, and the Government **SHALL create** a neutral contemporaneous record of the proceeding;

(3) If a bond hearing is not provided within fourteen days of the date of this Order, or within a period of continuance requested by Petitioner, Respondents **SHALL release** Petitioner subject to reasonable conditions of supervised release **no later than the fifteenth day after the date of this Order or the day following a period of continuance requested by Petitioner**;

(4) Respondents **SHALL file** a declaration with the Court confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming Petitioner's request for a continuance or his release by **December 9, 2026;**

(5) If the bond hearing is continued at Petitioner's request, Respondents **SHALL file** a supplemental declaration confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming Petitioner's release **within two days of the date of the continuance**.

//

//

Finally, the Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 23rd day of November, 2026.

Grady J. Leupold
United States Magistrate Judge